UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE EDWARD CLARK,

    Petitioner,                                  Civil No. 2:16-CV-11959
                                             HONORABLE VICTORIA A. ROBERTS
v.                                         UNITED STATES DISTRICT JUDGE

NOAH NAGY, [1]

    Respondent,
_____/

## OPINION AND ORDER GRANTING THE
## PETITION FOR WRIT OF HABEAS CORPUS

George Edward Clark, ("Petitioner"), confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree felony murder, M.C.L.A. 750.316. Petitioner was denied his Fourteenth Amendment right to due process by the suppression of potentially exculpatory evidence; the Court GRANTS the petition for writ of habeas corpus.

### I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was jointly tried with co-defendant Kevin Harrington.

---

[1] The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the Court substitutes Warden Noah Nagy in the caption.

After exhausting his state court remedies, Petitioner filed a petition for writ of habeas corpus, which this Court denied. *Clark v. Romanowski*, No. 08-10523, 2010 WL 3430782 (E.D. Mich. Aug. 30, 2010), *aff'd*, 472 F. App'x. 348 (6th Cir. 2012).

Petitioner filed a motion for an order authorizing the district court to consider a second or successive habeas petition under 28 U.S.C. § 2244(b)(3)(A) with the United States Court of Appeals for the Sixth Circuit. The motion was based in part on an affidavit from Ms. Keneka Jackson, dated August 10, 2015. Ms. Jackson is the daughter of a detective with the Inkster Police Department. Ms. Jackson says she witnessed a dark skinned African-American man forcing the victim into the woods at gunpoint before hearing gunshots. Ms. Jackson claims that Petitioner was not the shooter. Ms. Jackson claims that she told her father what she saw and heard; namely, that Petitioner was not involved in the shooting. She says her father informed her that he would take care of the matter and ordered her to keep quiet so as not to put her life in danger. [2]

The Sixth Circuit granted Petitioner permission to file a second habeas petition based on newly discovered evidence. The Sixth Circuit concluded that "Jackson's statements, if true, potentially exculpate Clark, especially given that there was no physical evidence linking him to the crime and no witness observed the actual shooting." *In Re Clark,* No. 15-2156, * 4 (6th Cir. Mar. 28, 2016). The Sixth Circuit further ruled that

---

[2] Ms. Jackson's affidavit is attached to Petitioner's original petition as Exhibit 2, Dkt. # 1, Pg ID 37-39, Exhibit 1 of the Amended Petition, Dkt. # 11, Pg ID 119-21, and Attachment D to Petitioner's reply brief. Dkt. # 16, Pg ID 3330-32.

"although Clark has not expressly stated a claim in connection with this new evidence, Jackson's allegation about her father, if proven, suggests that the police withheld information from the prosecutor that would exculpate Clark and that the prosecutor failed to disclose this information to Clark in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.,* at * 4-5.

Petitioner filed the current petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court held it in abeyance to permit Petitioner to return to the state courts to exhaust his *Brady* claim. *Clark v. Hoffner*, No. 2:16-CV-11959, 2016 WL 3269552 (E.D. Mich. June 15, 2016).

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.* The judge indicated that this was a successive motion for relief from judgment and that in order to be entitled to post-conviction relief, Petitioner was required to satisfy the dictates of MC.R. 6.502(G)(2), which allows the filing of a successive motion for relief from judgment only if the claim is based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *People v. Clark,* No. 02-013361-01-FC, * 2-3 (Third Cir. Ct., Nov. 16, 2016). The judge noted that to meet the burden of establishing entitlement to file a successive motion for relief from judgment, Petitioner was required to establish a four-prong test under *People v. Cress,* 468 Mich. 678, 664 N.W. 2d 174 (2003) for proving that the evidence was newly discovered: (1) the evidence and not merely its materiality must be newly discovered, (2) the evidence must

3

not be cumulative, (3) the evidence could not have been discovered with due diligence at trial, and (4) the evidence must make a different result probable at trial. *Id.*, at * 3.

The judge concluded that Petitioner had not met the fourth prong under *Cress,* i.e. that the new evidence would have made a different result probable at trial, so as to permit Petitioner to file a successive motion for relief from judgment. *Id.* at * 4-5. The judge never explicitly addressed the merits of Petitioner's claim that the police or prosecutor had intentionally withheld potentially exculpatory evidence, in violation of *Brady v. Maryland, infra*.

Petitioner filed a motion for reconsideration. The judge denied the motion for reconsideration. *People v. Clark,* No. 02-013361-01-FC, * 2-3 (Third Cir. Ct., Dec. 22, 2016). The judge did not discuss the merits of Petitioner's *Brady* claim in this order.

The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal on the ground that M.C.R. 6.502(G)(1) prohibits an appeal from the denial of a successive motion for relief from judgment. *People v. Clark,* No. 336319 (Mich.Ct.App. Ct., Mar. 1, 2017). Petitioner did not file an appeal with the Michigan Supreme Court. See Affidavit of Larry Royster, Clerk of the Michigan Supreme Court, dated April 2, 2018. Dkt. # 15-37.

The Court subsequently reopened the petition to the Court's active docket. Petitioner claims that his due process rights were violated by the suppression of exculpatory evidence by an Inkster Police Department detective.

## II. Discussion

The Court grants Petitioner a writ of habeas corpus; Petitioner was denied his Fourteenth Amendment right to due process by the suppression of potentially exculpatory evidence from Ms. Jackson: that she had informed her father, an Inkster police detective, that Petitioner was not one of the men involved in the shooting.

**A. Petitioner's second habeas petition satisfies the standard under 28 U.S.C. § 2244(B) for filing a second or successive habeas petition.**

Respondent argues that Petitioner's successive habeas petition should be dismissed pursuant to 28 U.S.C. § 2244(b)(4), because his *Brady* claim fails to satisfy the requirements for filing a second or successive habeas petition. [3] This Court disagrees.

Respondent initially argues that the Sixth Circuit overstepped its bounds in granting Petitioner permission to file a successive habeas petition to raise a *Brady* claim when Petitioner did not specifically seek to raise a *Brady* claim in his second habeas petition. Respondent appears to raise this argument primarily to preserve the issue in case there is an appeal. [4]

Under the law of the case doctrine, a court is ordinarily precluded from re-examining an issue previously decided by the same court, or by a higher court in the same case. *Consolidation Coal Co. v. McMahon*, 77 F. 3d 898, 905 (6th Cir. 1996). "Under the doctrine of law of the case, findings made at one point of the litigation become the law of

---

[3] Respondent concedes that Petitioner's habeas application is not barred by the statute of limitations, lack of exhaustion, procedural default, or the non-retroactivity doctrine. See Answer, Dkt. # 14, Pg ID, pp. 195-97.

[4] See Answer, Dkt. # 14, Pg ID, pp. 212-13.

the case for subsequent stages of that same litigation." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). The law of the case doctrine has been applied to habeas cases in various contexts. *See Crick v. Smith*, 729 F. 2d 1038, 1039 (6th Cir. 1984).

28 U.S.C. § 2244(b)(3)(E) states that the grant or denial of an authorization to file a second or successive habeas corpus petition "shall not be appealable." Further, it shall not be subject for a petition for rehearing or for a petition for writ of certiorari. *See In Re King*, 190 F. 3d 479, 480-481 (6th Cir. 1999).

The Sixth Circuit decided that Ms. Jackson's affidavit potentially established a *Brady* violation and thus granted Petitioner permission to file a second petition in which to raise this claim. Both the law of the case doctrine and 28 U.S.C. § 2244(b)(3)(E) prevent this Court from revisiting this issue.

The Sixth Circuit granted Petitioner permission, pursuant to § 2244(b)(3)(A), to file his second petition.

28 U.S.C. § 2244(b)(2) states:

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have

found the applicant guilty of the underlying offense.

The Sixth Circuit Court of Appeals' order is merely a determination by the Sixth Circuit that Petitioner made a prima facie showing that the application satisfied the requirements of 28 U.S.C. § 2244. See *Ferrazza v. Tessmer,* 36 F. Supp. 2d 965, 973 (E.D. Mich. 1999). "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004)(internal quotation omitted). Such a "'prima facie showing' ... is not a difficult standard to meet." *Id.* at 432.

28 U.S.C. § 2244(b)(4) requires a district court to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." *See In re McDonald,* 514 F. 3d 539, 543 (6th Cir. 2008). Therefore, even after a court of appeals certifies a successive motion on the basis that the movant made a prima facie showing that the statutory standard of § 2244(b) has been satisfied, it is appropriate for a district court to dismiss the petition or motion if the merits of the successive petition or motion do not ultimately satisfy that same statutory standard under § 2244(b). *See Tyler v. Cain,* 533 U.S. 656, 661, n. 3 (2001).

Petitioner does satisfy the standard for filing a successive habeas petition; and, his claim entitles him to habeas relief. The Court denies Respondent's request to dismiss the petition under 28 U.S.C. § 2244(b)(4).

**B. The standard of review.**

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

However, when a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell*,

8

556 U.S. 449, 472 (2009).

A federal court on habeas review must first address the "threshold question of the proper standard of review—specifically, whether AEDPA deference or *de novo* review applies." *Robinson v. Howes*, 663 F.3d 819, 822 (6th Cir. 2011). "Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Id.* at 823 (citing *Brown v. Smith*, 551 F.3d 424, 428, 430 (6th Cir. 2008)). Although there is a presumption that the state court adjudicated on the merits all claims presented to it, absent indicia to the contrary, *See Harrington v. Richter*, 562 U.S. 86, 99 (2011), this presumption may be overcome, "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Petitioner raised his *Brady* claim in his successive motion for relief from judgment. The judge never adjudicated the factual or legal basis of Petitioner's *Brady* claim. The judge never addressed whether Ms. Jackson's statement had been suppressed by her father, a police detective, or whether her father or any other police officer had a duty to disclose this evidence to the prosecution and to the defense. Instead, the judge adjudicated Petitioner's claim only in the context of determining whether Ms. Jackson's affidavit had satisfied the Michigan Supreme Court's four prong test to satisfy the newly discovered evidence exception under M.C.R. 6.502(G)(2). The judge decided that Petitioner failed to meet the fourth prong of this test in that he failed to show that Ms.

9

Jackson's proposed testimony would probably lead to a different result at trial, so as to permit Petitioner to file a successive motion for relief from judgment. The judge concluded that Petitioner failed to establish that he was entitled to file a successive motion for relief from judgment.

The Michigan Court of Appeals likewise rejected Petitioner's claim pursuant to M.C.R. 6.502(G)(1) without addressing the merits of Petitioner's claim.

This Court concludes that the AEDPA's deferential standard of review does not apply and that *de novo* review of Petitioner's *Brady* claim is appropriate; there was never a merits determination of Petitioner's *Brady* claim. *See Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014)(Ohio Court of Appeals did not adjudicate petitioner's *Brady* claim on merits, even though it discussed *Brady* claim briefly, when it concluded that it did not have jurisdiction under Ohio law to entertain the petitioner's second petition for post-conviction relief).

### C. The claim.

Petitioner claims that an Inkster police officer withheld evidence that would establish that he was not one of the men involved in the victim's shooting.

To prevail on his claim, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

Petitioner's claim is that Ms. Keneka Jackson informed her father, Detective Gregory Eugene Hill, of the Inkster Police Department that she witnessed a dark skinned African-American man force the victim into the woods at gunpoint before hearing gunshots. Ms. Jackson also swears that she told her father, that Petitioner was not the shooter. Ms. Jackson avers that she told her father what she had witnessed. Detective Hill informed his daughter that he would take care of the matter and ordered her to keep quiet so as not to put her life in danger. Ms. Jackson indicates in her affidavit that Petitioner did not know of her existence as a witness because she did not come forward sooner.

As an initial matter, Respondent does not argue, nor could he, that *Brady* does not apply simply because it was a police officer, and not the prosecutor, that suppressed the evidence. *Brady's* obligation to disclose applies to exculpatory evidence that is known only to the police, but withheld from the prosecution. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *See also Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009)("*Brady* .

11

. . applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not . . . and whether the accused asked for it or not."). "[B]ecause the police are just as much an arm of the state as the prosecutor, the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Moldowan v. City of Warren*, 578 F.3d 351, 379 (6th Cir. 2009).

Petitioner has also established that Ms. Jackson's identification of another suspect as the shooter was exculpatory evidence that was required to be disclosed under *Brady*. The suppression of evidence of a positive identification of another suspect by an eyewitness to a crime is a violation of *Brady*. *See Jamison v. Collins*, 291 F.3d 380, 389 (6th Cir. 2002), as amended on denial of reh'g (July 11, 2002). "Withholding knowledge of a second suspect conflicts with the Supreme Court's directive that 'the criminal trial, as distinct from the prosecutor's private deliberations, [be preserved] as the chosen forum for ascertaining the truth about criminal accusations.'" *Gumm v. Mitchell*, 775 F.3d at 364 (quoting *United States v. Jernigan*, 492 F.3d 1050, 1056–57 (9th Cir.2007)(en banc)(quoting *Kyles*, 514 U.S. at 440).

More importantly, Ms. Jackson's proposed testimony is material because it calls into question Petitioner's involvement in the shooting. The Sixth Circuit noted that: "[C]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Harris v. Lafler*,

12

553 F.3d at 1034 (internal citations omitted).

The prosecution's case was based on the testimony of one witness, Ms. Beria Stewart, who as the Sixth Circuit noted in its order granting Petitioner permission to file a second habeas petition, did not even witness the actual shooting. Ms. Stewart's preliminary examination testimony was read into the record at trial because Ms. Stewart, the sole eyewitness, was non-responsive to several questions or claimed that she was unable, or perhaps unwilling, to remember details of the crime. There was some evidence that this woman suffered from mental illness. *See In Re Clark*, No. 15-2156, *3-4 (6th Cir. Mar. 28, 2016).

Subsequent to Petitioner's trial, Ms. Stewart recanted her prior statements implicating Petitioner and his co-defendant Kevin Harrington. Mr. Harrington was granted a new trial because of ineffective assistance of counsel. At Mr. Harrington's re-trials, Ms. Stewart testified that her videotaped statement to the police and her testimony at the preliminary examinations, which implicated Petitioner and Mr. Harrington in the murder, were false. Ms. Stewart claimed that she was sleeping when the crime occurred. Ms. Stewart denied being threatened by the defendants after the shooting. Ms. Stewart testified that she previously lied about the murder because the Inkster Police threatened to put her in jail and to take her children away from her if she did not tell them the truth, i.e. implicate Petitioner and his co-defendant. *Clark v. Romanowski*, No. 08-10523, 2010 WL 3430782, at * 9 (E.D. Mich. Aug. 30, 2010).

There was a second prosecution witness, Tammy Wiseman. Ms. Wiseman

13

testified at Petitioner's trial that he instructed her to tell his attorney that Wiseman and Beria Stewart were together on the night of the murder, that the Inkster Police fabricated the allegation about Petitioner, and that Stewart agreed with this false story in order to get protection, housing, and money. Ms. Wiseman testified that the things that Petitioner asked to say were not true and that she did not see Beria Stewart on the day of the murder. Ms. Wiseman testified that, after her conversation with Petitioner, she made a written statement to the police and testified under oath at the prosecutor's office. Ms. Wiseman claimed that she subsequently received threatening telephone calls and letters warning her that, for her and her children's sake, she should not appear in court. However, at one of Kevin Harrington's retrials, Ms. Wiseman testified that nobody told her what to say and that Petitioner did not try to influence her testimony. Ms. Wiseman denied receiving any threatening letters or telephone calls and indicated that Ms. Stewart was with her on the day before the victim's body was discovered. Ms. Wiseman claimed that she she previously perjured herself and "had lied consistently throughout the case." *Clark v. Romanowski*, 2010 WL 3430782, at * 9.

Neither Ms. Stewart nor Ms. Wiseman actually saw the shooting. Ms. Stewart was declared unavailable to testify at Petitioner's trial because she was non-responsive or claimed she could not remember details of the crime. Ms. Stewart recanted her prior videotaped statement to the police and her preliminary examination testimony; Ms. Wiseman recanted her testimony given at from Petitioner's trial. No physical evidence linked Petitioner to this crime. Petitioner did not confess.

14

Ms. Jackson's statement that Petitioner was not the shooter would clearly be material to the outcome of this case, either as exculpatory evidence or impeachment evidence. At the very least, Ms. Jackson's proposed testimony creates a "probability sufficient to undermine confidence in the outcome" of the verdict. *Bagley,* 473 U.S. at 683.

Respondent argues that Ms. Jackson's affidavit should not be believed because she did not mention the name of her father or the date of his death in her affidavit. Respondent acknowledges, however, that he conducted a Google search, which turned up an obituary for Detective Gregory Eugene Hill of the Inkster Police Department and lists a Kanika Jackson as his daughter.[5] Petitioner included a printed copy of this obituary in his reply brief.[6] This obituary does not appear to contradict any of the information contained in Ms. Jackson's affidavit; if anything, this information corroborates much of Ms. Jackson's allegations. Although there may have been a delay in Petitioner obtaining an actual affidavit from Ms. Jackson, this Court is mindful of the fact that Petitioner was incarcerated at the time that he learned of this new evidence, did not have the benefit of counsel, and represented himself *pro se* in his various proceedings in the state and federal courts.

Petitioner also attached to his original habeas petition, a letter from two attorneys

---

[5] See Answer, Dkt. # 14 Pg ID 224, n. 4; www.chapelchimes.com/obituaries/Gregory-Hill-2411/#!/Obituary

[6] See Petitioner's Reply Brief, Attachment D, Dkt. # 16, Pg ID 3333-37.

from the Michigan Innocence Clinic, dated November 12, 2015. [7] The two attorneys, Maya Efrati and Jeremiah Junker, inform Petitioner that they spoke with Ms. Jackson who indicated to them that "she in fact witnessed the crime for which you were convicted, and she is certain that you were not there." The attorneys indicate that they could not represent Petitioner due to a conflict of interest, since they were already representing Petitioner's co-defendant in his habeas petition. The attorneys indicate that Ms. Jackson did not implicate either Petitioner or his co-defendant in the crime. The attorneys offered to refer Petitioner's case to the Wisconsin Innocence Project to have it assist Petitioner with his case due to the Michigan Innocence Clinic's conflict of interest. It is not clear whether Petitioner ever availed himself of this offer. But the fact that the Michigan Innocence Clinic offered to refer this matter to its fellow innocence project is compelling evidence that Ms. Jackson's story was credible. This letter has not been refuted by the Attorney General and is further evidence supporting Ms. Jackson's veracity.

This Court concludes that Petitioner's claim entitles him to habeas relief on his successive petition. Petitioner presented evidence sufficient to satisfy § 2244(b)(2)(B)(i), because there is no indication that he was aware of Ms. Jackson as a witness or as someone providing exculpatory information until after he had been denied relief on his first habeas petition. Petitioner also met the second threshold requirement

---

[7] See Petitioner's Exhibit 3, Dkt. 1, Pg ID # 41-42.

under § 2244(b)(2)(B)(ii), namely, in that he has shown by clear and convincing evidence that no reasonable juror would have found him guilty in light of this new evidence. *Keith v. Bobby,* 551 F.3d 555, 557 (6th Cir. 2009).

Finally, this Court determines that a conditional grant of a writ of habeas corpus, rather than an evidentiary hearing on Petitioner's claim, is the appropriate relief. Neither the Assistant Attorney General in his answer, nor the state trial judge in her opinion, offered any substantial facts to rebut the factual allegations raised by Petitioner, i.e. (1) that Ms. Jackson witnessed the shooting, (2) that Ms. Jackson observed that Petitioner was not the shooter, (3) that Ms. Jackson reported this to her father, Detective Hill of the Inkster Police, (4) that Detective Hill told his daughter not to divulge this information to anyone, and (5) that Detective Hill never disclosed his daughter's potentially exculpatory information to the prosecutor or to defense counsel.

Because the relevant facts have not been rebutted, they are not in dispute; an evidentiary hearing is unnecessary on Petitioner's *Brady* claim. *See Sawyer v. Hofbauer*, 299 F.3d 605, 612 (6th Cir. 2002).

The Court orders the State of Michigan to either (1) set a new trial date that is within ninety days of entry of this order, which is to be conducted in accordance with the conditions stated in this opinion, or (2) release Petitioner unconditionally. *See Mathis v. Berghuis,* 202 F. Supp. 2d 715, 725 (E.D. Mich. 2002).

### III. ORDER

**PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS**

**CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY (90) DAYS OF THE DATE OF THIS OPINION, THE STATE OF MICHIGAN SHALL RELEASE PETITIONER UNCONDITIONALLY FROM CUSTODY.**

**IT IS ORDERED.**

**Dated: 7/3/18**

S/ VICTORIA A. ROBERTS
**HONORABLE VICTORIA A. ROBERTS**
**UNITED STATES DISTRICT JUDGE**