UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE EDWARD CLARK,

    Petitioner,

v.                                          Case No. 16-11959
                                              HON. VICTORIA A. ROBERTS

BONITA HOFFNER,

    Respondent.
_____/

## ORDER GRANTING PETITIONER'S EMERGENCY MOTION FOR BOND [ECF No. 80]

**I.    INTRODUCTION**

Petitioner George Clark ("Clark") is a state prisoner at the Lakeland Correctional Facility. He filed this Emergency Motion for Bond pending the final resolution of his 28 U.S.C. § 2254 habeas petition. The motion is fully briefed. The Court held a bond hearing on April 8, 2020.

This case presents unique circumstances. Besides the strong merit of Clark's pending habeas petition, there is actual evidence of innocence. During his earlier release, Clark demonstrated that he is not a flight risk or a danger to the community and that he is willing to abide by bond conditions.

1

The proliferation of the COVID-19 virus in the Lakeland Correctional Facility poses a risk to Clark's health.

For these reasons, the Court **GRANTS** Clark's motion.

## II. BACKGROUND

A jury convicted Clark of first-degree felony murder in 2003. Clark exhausted state court remedies and filed a habeas petition. This Court denied it. *Clark v. Romanowski,* No. 08-10523, 2010 WL 3430782 (E.D. Mich. Aug. 30, 2010), *aff'd,* 472 F. App'x. 348 (6th Cir. 2012).

Clark requested permission from the Sixth Circuit Court of Appeals to file a second or successive habeas petition under 28 U.S.C. § 2244(b)(3)(A). He based his motion in part on an affidavit from Ms. Kaneka Jackson, dated August 10, 2015. Jackson said she was the daughter of an Inkster Police Detective (now deceased). She says she witnessed a dark skinned African American man forcing the murder victim into the woods at gunpoint and that she heard gunshots. Jackson attested that the man she saw was not Clark. She says she told her father what she saw and heard. While her father said he would take care of it, he did nothing.

The Sixth Circuit granted Clark permission to file a second habeas petition based on newly discovered evidence. *In re Clark,* No. 15-2156, 2016

WL 11270075, at *3 (6th Cir. Mar. 28, 2016) (order) (quoting *In re McDonald,* 514 F.3d 539, 544 (6th Cir. 2008)). Clark filed this habeas petition under 28 U.S.C. § 2254 claiming his due process rights were violated by Jackson's father's suppression of exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). The Court held the second habeas petition in abeyance to permit Clark to return to state court to exhaust his *Brady* claim. *Clark v. Hoffner,* No. 2:16-cv-11959, 2016 WL 3269552 (E.D. Mich. Jun. 15, 2016). Clark did exhaust, but to no avail.

This Court granted Clark a conditional writ of habeas corpus in July 2018 without an evidentiary hearing. [ECF No. 17]. The Court credited Jackson's affidavit and held the State denied Clark his Fourteenth Amendment right to due process if it withheld exculpatory evidence.

In granting Clark habeas relief, the Court gave the State ninety days to either retry or release him unconditionally. Clark filed a motion for bond pending the State's decision. [ECF No. 19]. Before the Court ruled on that motion, the State appealed the Court's habeas decision. [ECF No. 22]. Clark's motion for bond then became a motion for bond pending appeal.

The Court held a bond hearing on February 20, 2019. There is a presumption that a successful habeas petitioner will be released from

custody pending appeal of habeas relief. At the hearing, the Court found: (1) this presumption applied to Clark pursuant to *Hilton v. Braunskill,* 481 U.S. 770 (1987); (2) the State failed to overcome the presumption; and (3) a combination of conditions could be imposed to reasonably assure Clark's appearance and safety of the community. The Court granted Clark's motion for bond pending the State's appeal. [ECF No. 52].

The State appealed, and the Sixth Circuit ordered this Court to revoke Clark's bond. [ECF No. 57]. While on bond for approximately one month, Clark abided by all bond conditions set by this Court.

Later, the Sixth Circuit remanded Clark's petition to this Court for an evidentiary hearing. *Clark v. Warden,* 934 F.3d 483 (6th Cir. 2019). The Sixth Circuit pointed out that "[c]ertain credibility questions are apparent in [the] affidavit," of Jackson. It held that "[a] remand for an evidentiary hearing is therefore necessary to determine whether Clark has made out a *Brady* claim." *Id.* at 494. The Sixth Circuit filed its remand order on August 12, 2019 and issued its mandate on September 4, 2019. Importantly, this remand order did not nullify the bond evidentiary hearing or findings made by the Court.

The habeas evidentiary hearing has been rescheduled multiple times at the parties' request, because the Wayne County Conviction Integrity Unit ("CIU") opened its own investigation into Clark's case. Evidentiary hearings set for November 13, 2019, December 18, 2019, and March 17, 2020 were adjourned.

On March 17, 2020, the Court held a status conference on the record. Valerie Newman, the Director of CIU, informed the Court that her investigation is nearing conclusion, that she uncovered an alibi witness, and that she intends to recommend to the Wayne County Prosecutor that Clark receive either complete exoneration or a new trial. Director Newman estimated that a final decision from the Wayne County Prosecutor may not come for three months.

In light of this investigation and the novel and rapidly spreading COVID-19 pandemic, this Court asked if the State would stipulate to Clark's release pending the CIU's official recommendation. The State declined to do so.

Clark now seeks bond based on the unique circumstances of his case.

### III. STANDARD OF REVIEW

For the Court to release Clark pending review of his habeas claim, he has the burden to show: (1) a substantial claim of law; and (2) some circumstance making this motion for bond "'exceptional and deserving of special treatment in the interests of justice.'" *Dotson v. Clark,* 900 F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May,* 85 S.Ct. 3,5 (1964)). Since a habeas petitioner is appealing a "'presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be a very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case.'" *Puertas v. Overton,* 272 F. Supp. 2d, 621, 630 (E.D. Mich. Jul. 17, 2003) (quoting *Lee v. Jabe,* 989 F.2d 869, 871 (6th Cir. 1993)). The Court finds that this is that unusual case.

### IV. ANALYSIS

**A. Substantial Claim of Law**

The Court already found that Clark was potentially deprived of his Fourteenth Amendment right to due process. Jackson testified that in 2002, she told her father – a law enforcement officer – that Clark was not the man she personally witnessed leading the victim into the woods. Jackson's father was with the Inkster Police Department, the same department that

6

investigated this murder. He told her he would relay this information but never did.

Even though the State acknowledges the CIU investigation could very well result in Clark's exoneration and release from custody, the State says it would be premature for the Court to decide that Clark presents a substantial claim of law. It says the Court can only make this decision if, after an evidentiary hearing, the Court finds Jackson's statements are credible. The State says an evidentiary hearing will provide it with an opportunity to test Clark's claims by questioning Jackson under oath.

Additionally, the State says the following weigh against Jackson's credibility: (1) Jackson's years-long delay in coming forward with this exculpatory information; (2) the nature of Jackson and Clark's relationship; and (3) Jackson's initial avoidance of investigators. For these reasons, the State argues that Clark cannot demonstrate a substantial claim of law.

This argument defies logic. While the State acknowledges the standard of review for a bond motion pending habeas review, the State says the Court cannot make the finding the Court is allowed – and required – to make when bond is requested while a habeas petition is pending. The State's position is simply contrary to law.

Clark persuasively cites to *Puertas v. Overton,* 272 F. Supp 2d 621 (E.D. Mich., Jul. 17, 2003). There, the district court found the petitioner presented a substantial claim based on the facts surrounding his habeas petition, and that his showing was bolstered by the fact that the trial court found his *Brady* claim meritorious and granted a new trial. *Id.* at 631. The Court was persuaded by this even though the appellate court overturned the grant of a new trial. *Id.* at 630. By the same token, this Court has already found substantial merit to Clark's *Brady* claim, has evaluated the credibility of new evidence, and released Clark on bond.

Notably, in remanding Clark's habeas petition for an evidentiary hearing, the Sixth Circuit observed that the State had known of Jackson's affidavit since 2015, when Clark moved to file his successive petition, and that it had three years to produce evidence that Clark influenced Jackson's testimony or that Jackson was not a reliable witness. *Clark v. Warden,* 934 F.3d at 493.

The State overlooks the fact that Jackson testified, and it cross-examined her, at Clark's bond hearing. The State had the opportunity to, and did in fact, question Jackson on the same topics it says weigh against her

credibility. The Court found Jackson credible, and noted this finding as a basis for granting Clark's motion for bond.

The Court stands by its finding that Jackson is a credible witness. At that hearing, the Court asked the State's counsel: "did you do what you would have done in an evidentiary hearing today to test the credibility of this affidavit?" [ECF No. 53, PageID.3596]. The State responded, "I think it's probably yeah, very similar to what we would have done if this Court had ordered an evidentiary hearing. I don't know if we would have done more." *Id.*

It appears that the habeas evidentiary hearing the State says the Court should hold before granting Clark bond would produce overwhelming evidence of innocence rather than guilt. At the bond hearing on April 8, 2020, Director Newman disclosed additional evidence from her investigation that supports a recommendation of relief for Clark. For example, Clark's alibi witness, Tyronda Moore, voluntarily went to the police the day after the murder and told officers that she was with Clark during the time of the murder. Director Newman said that – although the CIU is still finalizing its memorandum – it believes Moore was arrested, held, and potentially coerced by the same detective who coerced the primary witness, Beria

9

Stewart. Stewart has recanted multiple times. Through her investigation, Director Newman concludes that the investigating Inkster detective demonstrated a pervasive pattern to intimidate and coerce potential exculpatory witnesses.

Additionally, the CIU uncovered another eyewitness, Nicole Williams. Williams says that on the night of the murder, she approached the victim and another man to buy drugs. She says the victim told her to return later, and that as she was driving away from the two men, she heard gunshots. Director Newman says other witnesses identified this second man as the murderer. He is deceased.

The CIU says as it nears the conclusion of its investigation, it is prepared to recommend either complete exoneration or a new trial for Clark. And, if the recommendation is for a new trial, Director Newman said that she would probably recommend dismissal without a trial because Ms. Stewart has no credibility.

Now, it is even clearer to the Court that its original determination that Clark was entitled to relief was a correct one, buttressed by a months long investigation by the CIU. Surely, the CIU must have also concluded that Jackson is a credible witness, and that had the information the unit

uncovered been previously available to Clark, there is a reasonable probability the result of the proceedings against him would have been different.

While it is true that the Wayne County Prosecutor or the State may decline to follow the recommendations of Director Newman and the CIU, that does not change the Court's determination that Clark presents a substantial claim that he was deprived of his due process rights during his trial proceedings.

### B. The Existence of the COVID-19 Pandemic and Clark's Previous Behavior While on Bond Make This Motion Exceptional and Deserving of Special Treatment in the Interests of Justice

The State attempts, but fails, to distinguish Clark from other cases where courts found exceptional circumstances warranted release on bond while a habeas petition is pending: *see Salerno v. United States,* 878 F.2d 317 (9th Cir. 1989) and *Johnston v. Marsh,* 227 F.2d 528, 529 (3rd. Cir. 1955) (finding exceptional circumstances where the petitioner suffered from serious health conditions), and *Boyer v. Orlando,* 402 F.2d 966, 968 (5th Cir. 1968), (finding exceptional circumstances because the petitioner had so little

of his sentence left, that no practical relief could be afforded to him by the time the court ruled on his petition).

The State acknowledges the COVID-19 pandemic is an exceptional circumstance for society as a whole, but says Clark's status as a prisoner serving a life sentence remains unchanged, and that his situation is no different from any other prisoner serving a lengthy sentence and facing the danger of contracting COVID-19. The Court disagrees.

The State points out that Michigan prisons are taking precautions: (i) the screening of all persons, including staff, entering a prison facility; (ii) limited visits and off-site appointments; and (iii) stringent cleaning of facilities on a regular and ongoing basis. The Court has no reason to doubt the good faith of the Michigan Department of Corrections. However, it can only do so much given the structure of the prison system.

There is no doubt that prisoners face a great risk of infection; inmates and staff have a reduced ability to practice the social distancing and quarantine recommendations of the Centers for Disease Control and Prevention.

When Clark filed his motion on March 30, 2020, 2 inmates at the Lakeland Correctional Facility where he is housed had tested positive for the

virus. When he filed his Reply – not even a week later – there were 25 confirmed cases of COVID-19. At the bond hearing on April 8, 2020, his lawyer said 33 prisoners and 12 staff tested positive. Nine tests are pending. A Lakeland Facility prisoner has died from the virus.

As those of us outside of prison walls know all too well, COVID-19 is spreading exponentially and silently from asymptomatic carriers of the virus to others. No one is safe.

Independent of COVID-19, Clark was on bond for almost a month before the Sixth Circuit revoked his bond. Clark abided by all the conditions set by the Court. When his bond was revoked, Clark voluntarily returned to custody at the designated time. This demonstrates that Clark is not a risk of flight or a danger to the community while on bond and supports the Court's finding that he demonstrates special circumstances that warrant release.

### V. CONCLUSION

The Court **GRANTS** Petitioner's Emergency Motion for Bond. Clark presents a substantial claim of law for many reasons, not the least of which is that the Wayne County Conviction Integrity Unit is on the verge of recommending his complete exoneration or a new trial, based on its

independent investigation into events surrounding Clark's prosecution that may prove his actual innocence.

That means an actually innocent person may now be confined at Lakeland Correctional Facility and exposed to prison conditions that promote the spread of COVID-19. The strong likelihood of his innocence and COVID-19 make this request for bond exceptional and deserving of special treatment in the interest of justice.

The Court will set conditions, including no contact with witnesses or Jackson, travel limited to within the Eastern District of Michigan, and that Clark self-quarantine for a period of 14 days following his release and observe the CDC's social distancing recommendations. These and other conditions attached to this Order will reasonably assure the safety of the community and Clark's appearance as required.

**IT IS ORDERED.**

s/ Victoria A. Roberts<br>Victoria A. Roberts<br>United States District Judge

Date: April 8, 2020